IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY SCARBOROUGH-JESSIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-04-816-L |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on February 22, 1999, alleging that she became disabled on December 31, 1995, due to morbid obesity and depression. (TR 39-41,

47). Plaintiff's application was administratively denied. (TR 18, 19). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge McCarthy on April 11, 2001, at which Plaintiff and a vocational expert ("VE") testified. (TR 225-256). Subsequently, ALJ McCarthy issued a decision on February 8, 2001, in which ALJ McCarthy found that Plaintiff had severe impairments due to obesity and a personality disorder, that despite these impairments Plaintiff was capable of performing her previous jobs as a cook's helper, dietary aide or kitchen helper, and assembler, and that Plaintiff was consequently not disabled within the meaning of the Social Security Act. (TR 277-282). The agency's Appeals Council declined to review this administrative decision. (TR ). Plaintiff appealed the final decision of the Commissioner embodied in the ALJ's determination to this Court.  The cause of action, Scarborough v. Barnhart, CIV-01-1537-M, was referred to United States Magistrate Judge Doyle Argo pursuant to 28 U.S.C. §636(b)(1)(B) for initial proceedings.  In a Report and Recommendation entered November 21, 2002, Magistrate Judge Argo recommended that Plaintiff's application be remanded to the Commissioner for further administrative proceedings because of errors in ALJ McCarthy's evaluation of the medical evidence. (TR 283-295).  United States District Judge Vicki Miles-LaGrange adopted this Report and Recommendation and ordered Plaintiff's application remanded to the Commissioner for further administrative proceedings consistent with the Report and Recommendation. (TR 297-298).

Following the Order entered by District Judge Miles-LaGrange, the Appeals Council vacated the previous decision of the Commissioner and remanded Plaintiff's application for

a second administrative hearing. (TR 299-300). A second hearing *de novo* was conducted on Plaintiff's application before Administrative Law Judge Hiltbrand ("ALJ") on March 4, 2004, at which Plaintiff and a VE testified. (TR 415-465). The ALJ subsequently issued a decision (TR 260-269) in which the ALJ found that Plaintiff was insured for disability benefits only through June 30, 1997, that on or before June 30, 1997, Plaintiff had a severe impairment due to obesity, and that Plaintiff's severe impairment was not disabling *per se* as it did not satisfy the requirements of the agency's Listing of Impairments. The ALJ further found that despite Plaintiff's severe impairment she had the residual functional capacity ("RFC") on or before June 30, 1997, to perform work at the medium exertional level with no more than minimal functional limitations resulting from a nonsevere mental impairment. (TR 268). Relying on the testimony of the VE, the ALJ found that this RFC did not preclude Plaintiff's performance of her past relevant work as a retail salesperson, assembly worker, or waitress as of June 30, 1997, and that Plaintiff was consequently not disabled within the meaning of the Social Security Act. (TR 268-269). Plaintiff appeals this final decision of the Commissioner.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The Court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v.

Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*).  If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the Court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam)*.  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §416(i).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f) (2004); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that she has one or more severe impairments.  20 C.F.R. §404.1512 (2004); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific

4

type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

Plaintiff's insured status for Title II disability insurance benefits expired on June 30, 1997.[1] (TR 56, 261). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on June 30, 1997. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). "[T]he issue is the existence of a disability at a particular time and not the identification of a cause." Flint v. Sullivan, 951 F.2d 264, 268 (10th Cir. 1991). In other words, if there is medical evidence of a degenerative or ongoing impairment, "[t]he relevant inquiry ... is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition." Stonebraker v. Shalala, 827 F.Supp. 1531, 1536 (D.Kan. 1993).

III. Mental Impairment

Plaintiff contends that the ALJ erred in failing to consider relevant evidence concerning Plaintiff's limitations in the area of social functioning, erred in finding that Plaintiff did not have a severe mental impairment on or before June 30, 1997, and erred in

---

[1] In the previous administrative decision by ALJ McCarthy, ALJ McCarthy found that Plaintiff's insured status did not end until June 30, 2001. (TR 278). Plaintiff does not dispute the ALJ's finding in the administrative decision entered following remand that her insured status ended June 30, 1997.

failing to consider the social functional limitations resulting from Plaintiff's mental impairment in determining Plaintiff's RFC for work. Defendant Commissioner responds that no error occurred with respect to the ALJ's consideration of the evidence of Plaintiff's alleged mental impairment and that there is substantial evidence to support the ALJ's finding of no severe mental impairment and no more than minimal functional limitations resulting from the nonsevere mental impairment.

At the second step of the required sequential analysis, the ALJ must determine whether the claimant has a severe impairment "which significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c)(2004). See Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)(at step two, "claimant must make a threshold showing that his medically determinable impairment . . . significantly limits his ability to do basic work activities.").

The ALJ followed the requisite sequential procedure in evaluating Plaintiff's application. The ALJ expressly determined that Plaintiff did not have a severe mental impairment on or before the date her insured status expired. (TR 262). The ALJ provided specific reasons for this finding in his decision, which reflects his consideration of the medical evidence of a mental impairment within close proximity to the insured status expiration date. (TR 264-265). Specifically, the ALJ referred to the medical records of Plaintiff's outpatient treatment at New Horizons community mental health clinic between May 31, 1995 and July 17, 1995, and again between September 12, 1996 and August 21,

1997.  The ALJ also referred to the consultative mental status examination of Plaintiff by Dr. Danaher conducted on April 6, 1999.

Plaintiff first asserts that the ALJ committed legal error by ignoring probative evidence of Plaintiff's social functioning ability.  Plaintiff refers to subjective statements she made to her counselor at the New Horizons clinic in September and October of 1996.  The ALJ recognized that Plaintiff sought mental health treatment in September 1996 for depression and anxiety.  However, the ALJ's decision reflects his consideration of these treatment records.  The ALJ's decision indicates that he based his findings on objective medical evidence in the record, including the observed symptoms and objective findings contained in the treatment notes of Plaintiff's counselor at New Horizons, a psychosocial assessment of Plaintiff conducted by her counselor at New Horizons, and the mental status evaluation of Plaintiff conducted by a consultative examiner, Dr. Danaher, in April 1999.  These medical records provide substantial evidence in the record to support the ALJ's determination that Plaintiff did not have a severe mental impairment on or before June 30, 1997. Further, the ALJ found that Plaintiff's subjective statements were not entirely credible, and the ALJ provided specific reasons for this credibility determination that are well supported by the record. (TR 266-267).  No error occurred in this respect.  The ALJ is not required to discuss every piece of evidence in the record. See Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)("The record must demonstrate that the ALJ considered all

of the evidence, but an ALJ is not required to discuss every piece of evidence."). Plaintiff essentially asks this Court to reweigh the evidence, which this Court may not do.[2]

The ALJ found that Plaintiff's RFC for work was not restricted by her mental impairment as the impairment had resulted in no more than minimal functional limitations which did not significantly impact her ability to work. (TR 267). Plaintiff refers to the same subjective statements she relied on in her first claim of error to support her assertion that the ALJ erred in not finding her social functioning ability was limited. Plaintiff contends that the evidence showed her ability to work was limited as a result of "her aggressive behavior and resulting difficulties with interacting appropriately with coworkers and supervisors...." Plaintiff's Brief, at 9, 11. The objective medical evidence supports the ALJ's finding that Plaintiff's mental impairment did not limit her RFC for work. Plaintiff voluntarily left her outpatient mental health treatment in 1995 after only two months, indicating that her mental impairment did not significantly affect her functional ability. There was no evidence of

---

[2]Plaintiff refers to a treatment note authored by Plaintiff's treating physician, Dr. Krompecher, on December 12, 1997. In this note, Dr. Krompecher refers to Plaintiff's statement that she was attacked by her roommate the previous night. (TR 115). This isolated notation does not reflect that Plaintiff's social functioning ability was limited on or before June 30, 1997, although her roommate's social functioning ability might have been cause for Plaintiff's concern. The next notation cited by Plaintiff is of a medical treatment note indicating Plaintiff stated she had been involved in a fight in December 1997. This notation does not relate to Plaintiff's social functioning ability on or before the date that her insured status expired. Plaintiff also relies upon some subjective statements she made to a consultative medical examiner in April 1999 regarding her work history. Plaintiff's Brief, at 9. These subjective statements are too vague to provide evidence that Plaintiff had a severe mental impairment on or before the date her insured status expired. Indeed, Plaintiff testified that she left her most recent job because of her pregnancy, not because of any emotional or mental difficulties. (TR 439).

treatment or mental health problems between July 1995 and September 1996, when she again sought treatment for depression and anxiety. The records of this second period of outpatient treatment between September 1996 and August 1997 reflect that Plaintiff's mental condition significantly improved and Plaintiff voluntarily stopped taking the medication prescribed by the treating psychiatrist. At the time of her discharge from treatment in August 1997, Plaintiff subjectively reported that her anxiety/depression symptoms were manageable and that her relationship conflicts had decreased. (TR 89). Plaintiff was discharged from treatment with no plan for further treatment because she reported she was doing well. (TR 89). The ALJ's finding that Plaintiff's mental impairment resulted in no more than minimal functional limitations was further supported by the RFC assessments appearing in the record by the nonexamining mental health professionals. (TR 154-162, 166-174). There is substantial evidence in the record to support the ALJ's determination that Plaintiff's mental impairment did not result in more than minimal functional limitations on or before June 30, 1997, and no error occurred in this regard.[3] Plaintiff does not question the ALJ's step four finding with respect to Plaintiff's exertional capacity for work or the ALJ's finding, based

---

[3] Plaintiff points to further alleged error in her brief in the ALJ's hypothetical questioning of the VE concerning the impact of a claimant's moderate limitations in certain social functioning skills. However, the ALJ did not find that Plaintiff has moderate limitations in the area of social functioning. Because there is substantial evidence to support the ALJ's finding that Plaintiff has no more than minimal functional limitations resulting from a mental impairment on or before June 30, 1997, this hypothetical inquiry is not relevant to the issues to be determined in this appeal. See Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996)(in eliciting testimony from VE, ALJ's inquiry "need only reflect impairments and limitations that are borne out by the evidentiary record" and ALJ is not bound by testimony of VE that is not accepted by ALJ).

9

on the testimony of the VE, that in light of her RFC for work Plaintiff is capable of performing her previous work. There is substantial evidence in the record to support these findings. Accordingly, the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits. Plaintiff is advised of her right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     March 30th    , 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1. The Plaintiff is further advised that failure to file a timely objection to this Report and Recommendation waives her right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this   10th   day of     March    , 2005.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

11